IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| GUARANTEED HOME MORTGAGE COMPANY, INC., | CV 13-44-BLG-CSO |
| Petitioner, | **ORDER ADDRESSING MOTION TO COMPEL** |
| vs. | |
| MIKI GISSELL, | |
| Respondent. | |

This case arises from employment-related disputes between Petitioner Guaranteed Home Mortgage Company, Inc. ("GHMC") and pro se Respondent Miki Gissell ("Gissell"). GHMC generally claims that its employment agreement with Gissell requires that their disputes be arbitrated. *First Am. Pet. for Order Compelling Arbitration (ECF 21)*. Gissell disagrees that there is any agreement between them requiring arbitration. *Respondent['s] Second Am. Answer (ECF 27) at 3*. She also asserts various counterclaims against GHMC. *Id. at 23-31*.

1

On August 26, 2013, Gissell filed a motion for an order compelling GHMC to answer her Requests for Admission ("RFA") numbered 1-5, 8, 14, and 28-40.[1]  *Mtn. to Compel (ECF 35).*  Gissell also requests sanctions and costs, and "an Order striking the verification of the Responses by [GHMC]."  *Id.*  On September 9, 2013, GHMC filed its response to Gissell's motion.  *ECF 38.*  On September 26, 2013, Gissell filed her reply brief.  *ECF 39.*  Having considered the parties' arguments, the Court rules as discussed below.

## I.   <u>Summary of Parties' Arguments</u>

Gissell argues generally that GHMC "refuses to let [her] conduct discovery on her theories of the case or to even allow for the possibility that her discovery requests could lead to the discovery of additional helpful information."  *Gissell's Decl. in Support of Mtn. (ECF 36) at 2.*  Gissell argues that she "should be able to conduct discovery ... so as to prepare a defense that [the] conduct of both parties was at variance to

---

[1]In her motion, Gissell included RFA 27 as an RFA for which she seeks a response.  *ECF 35 at 1.*  She did not, however, include either the text of and response to RFA 27 or any argument about it in her supporting declaration.  *ECF 36 at 13-19.*  Thus, the Court is unable to address RFA 27 and denies Gissell's motion to the extent it seeks an order compelling an answer to RFA 27.

any agreement to arbitrate" and that "mistake [respecting her signature on the Employment Agreement with GHMC] entitles her to discovery that is broader than that that occurred at a moment in time." *Id. at 3*.

GHMC argues that the parties, after participating in a joint discovery conference on May 14, 2013, filed the Joint Discovery Plan upon which they agreed. *ECF 38 at 2* (referring to Joint Discovery Plan (*ECF 13*)). GHMC argues that "[t]he parties agreed that this Discovery Plan related only to the issue of whether [Gissell] should be required to arbitrate her claims against GHMC." *Id. at 3*. GHMC argues that, at the parties' preliminary pretrial conference with the Court, "the parties agreed with the Court that the issues in this case should be bifurcated between the initial issue of arbitration and, depending upon the outcome of that issue, the underlying employment dispute." *Id*. GHMC notes that, despite the parties' agreement, Gissell sent it 42 RFAs and other discovery. While it answered some of this discovery, GHMC argues, "it has objected to those [discovery requests] that are purely related to the underlying employment dispute or those that are

irrelevant to all issues in the case and not reasonably calculated to lead to the discovery of admissible evidence." *Id.*

In reply, Gissell essentially argues that the scope of discovery at this juncture is broader than asserted by GHMC. *Gissell's Reply Br. (ECF 39).* She argues that, to support her theory of the case – that is, that no contract for arbitration was ever formed – she is entitled to propound discovery that sheds light on GHMC's "sloppy" business practices. *Id. at 2-4.*

## II.   <u>Legal Standards</u>

Rule 36(a)(1)[2] provides for requests for admission as follows:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> (A)   facts, the application of law to fact, or opinions about either; and
>
> (B)   the genuineness of any described documents.

Rule 26(b)(1), in turn, provides in part:

> Unless otherwise limited by court order, the scope of

---

[2]References to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

> discovery is as follows:  Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to
> any party's claim or defense ....  For good cause, the
> court may order discovery of any matter relevant to
> the subject matter involved in the action.  Relevant
> information need not be admissible at the trial if the
> discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.

"Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).  Courts have broad discretion in determining relevancy for discovery purposes.  *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Respecting requests for admission, Rule 36(a) generally requires one of four responses: (1) an admission; (2) a denial; (3) a statement detailing why the answering party is unable to admit or deny the matter; or (4) an objection.  Rule 36(a)(4) and (5).  If a party objects, as GHMC did here, "[t]he grounds for objecting to a request must be stated."  Rule 36(a)(5).  "The requesting party may move to determine the sufficiency of an answer or objection.  Unless the court finds an

5

objection justified, it must order that an answer be served."  Rule

36(a)(6).

The Federal Arbitration Act ("FAA"), which governs contracts

that involve interstate commerce, declares a national policy favoring

arbitration.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440,

445 (2006)*; Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984).  The

United States Supreme Court has very clearly interpreted

the FFA as circumscribing the role of courts in considering challenges

to arbitration clauses. *See AT&T Mobility LLC v. Concepcion*, 131

S.Ct. 1740, 1748-49 (2011); *Rent-A-Center, West, Inc. v. Jackson*, 130

S.Ct. 2772, 2778 (2010); *Volt Information Sciences, Inc. v. Board of*

*Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The Supreme Court finds that a court is limited to determining: (1)

whether a valid agreement to arbitrate exists and, if it does, (2)

whether the agreement encompasses the dispute at issue.  *Cox v. Ocean*

*View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). For this

purpose, "an arbitration provision is severable from the remainder of

the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440,

445 (2006). If the arbitration provision is valid, the validity of the

remainder of the contract is for the arbitrator to decide. *Nitro-Lift*

*Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012).

Thus, at this stage of the proceedings, discovery may be had

pursuant to Fed.R.Civ.P. 26 and 36, provided it is pertinent to the

narrow questions of whether there is a valid arbitration provision and

whether that provision, if valid, encompasses the disputes at issue.

## III.   Discussion

Applying the above standards, the Court's task is to decide

whether GHMC's objections to Gissell's RFAs are justified.

### A.   RFAs 1-5

Gissell propounded RFAs 1-5[3] asking GHMC to admit that: (1) "in

2012 GHMC withheld no income from Gissell's earnings for deposit on

her behalf with the New York State Department of Taxation and

Finance as New York State income tax withholding[,]" (RFA 1); (2) "in

2012 GHMC paid no unemployment insurance assessments occasioned

---

[3]Gissell sometimes refers to her discovery requests as "Request[s] to Admit."  ECF 36 at 3, 4, 6, 8, 10, and 12.  For clarity, the Court refers to such requests as Requests for Admission consistent with Rule 36.

by Ms. Gissell's employment with GHMC to the New York State
Department of Labor, Unemployment Insurance Division[,]" (RFA 2);
(3) "in 2012 GHMC withheld $2,195.00 in income from Gissell's
earnings for deposit on her behalf with the Montana Department of
Revenue as Montana State income tax withholding[,]" (RFA 3); (4) "in
2012 GHMC paid unemployment insurance assessments occasioned by
Ms. Gissell's employment with GHMC to the Montana Department of
Labor, Unemployment Insurance Division[,]" (RFA 4); and (5) "GHMC
did not in 2012 advise orally or in writing Ms. Gissell that it intended
to file a 2012 W-2 with the State of New York[,]" (RFA 5).  *ECF 36 at 3-
10*.

GHMC responded to each RFA as follows:

Objection; not relevant or reasonably calculated to lead to
the discovery of admissible evidence on the issue of whether
this matter should be arbitrated.  As set forth in the Joint
Discovery Plan of the parties (Doc. #13), the initial discovery
is limited to the issue of arbitration.  Gissell's Request for
Admission goes beyond the scope of the arbitration issue and
is not discoverable at this time.  If the Court determines
that arbitration is not the appropriate forum for this matter,
GHMC will supplement its response.

*Id.*

8

Gissell argues that the admissions she seeks in RFAs 1-5 are relevant.  She argues that the admissions sought pertain to GHMC's employee "on-boarding" and human resources processes that she went through when employed by GHMC.  She maintains that the admissions sought illustrate that these processes were "seriously flawed" and "generally ... rife with mistakes" which she believes is probative of her affirmative defense that mistake voids the arbitration contract.  *Id.* Some of the requests, she argues, go "to error in setting up Gissell for employment, which GHMC, in effect, admits when it concedes that it sent two W-2s to Gissell at different times."  *Id.*  Gissell also argues that some of the admissions sought are relevant respecting "course of conduct" and to GHMC's credibility and to her own credibility respecting her mistake affirmative defense.  *Id. at 7 and 9-11.*

The Court is not persuaded.  Proceedings in this matter thus far have been directed at resolving in the first instance the issue of whether Gissell must arbitrate her claims against GHMC.  In the parties' Joint Discovery Plan, they represent that they "agree that this Discovery Plan relates only to the issue of whether [Gissell] should be

required to arbitrate her claims against GHMC." *ECF 13 at 2*. And
also reflecting the parties' intention of having that issued decided first,
in the Scheduling Order issued on June 12, 2013, the Court imposed a
September 30, 2013 deadline for the parties to file cross motions for
summary judgment, adding a provision for holding another scheduling
conference, if necessary, after decisions are made on all motions filed by
that deadline. *ECF 24 at 2*.

RFAs 1-5 do not seek admissions pertaining to the arbitration
provision in the contract at issue. Gissell implicitly acknowledges that
she signed the contract at issue (*ECF 36 at 5* (arguing that "her
signature a single time on one document is not probative")), but she
challenges the validity of the contract as a whole. If there is a valid
arbitration provision, however, the validity of the remainder of the
contract is, as set forth above, a matter the arbitrator must decide.
Whether admitted or denied by GHMC, answers to the questions posed
in Gissell's RFAs 1-5 support neither the existence nor absence of a
valid arbitration provision or of an agreement to arbitrate a dispute.

Gissell argues that the requests are directed toward her

affirmative defense of "mistake" and to showing that GHMC's "on-

boarding process and the human resources process generally is rife

with mistakes that goes (*sic*) to Gissell's affirmative defense." *ECF 36*

*at 6.*  But to be discoverable at this stage of the proceedings, the

requests would need to be directed to any mistakes regarding the

arbitration provision.  Also, to understand the law of mistake, " one

must appreciate the phrases of art that are applied." 27 Williston on

Contracts § 70:1 (4th ed.).  A mistake made by a GHMC employee

regarding state law on taxation, for example, is not relevant to the

issue of whether the contract requires arbitration.  The "Williston on

Contracts" treatise further explains:

> The word mistake refers to an erroneous belief as to operative
> facts. A party's erroneous belief is said to be a mistake of that
> party. The belief need not be an articulated one, and a party may
> have a belief as to a fact when merely making an assumption with
> respect to it, without being aware of alternatives. This term is not
> used here, as it is sometimes used in common speech, to refer to
> an improvident act, including the making of a contract, that is the
> result of such an erroneous belief. This usage is avoided here for
> the sake of clarity and consistency. Furthermore, the erroneous
> belief must relate to the facts as they exist at the time of the
> making of the contract. A party's prediction or judgment as to
> events to occur in the future, even if erroneous, is not a mistake
> as that word is defined here. An erroneous belief as to the
> contents or effect of a writing that expresses the agreement is,

however, a mistake.

*Id.*

The Court, therefore, concludes that GHMC's objection is justified. Gissell's motion to compel, to the extent it relates to RFAs 1-5, is denied.

**B.   RFA 8**

Gissell propounded RFA 8 asking GHMC to admit that "upon hiring employees resident in the State of Montana in 2012 [GHMC] did not investigate the requirements of Montana Code Annotated 39-2-901 et seq." *ECF 36 at 12.*

GHMC responded to RFA 8 with the same relevance objection stated above in response to RFAs 1-5. *Id.*

Gissell argues that the admission she seeks with RFA 8 is relevant. She argues that "GHMC boasted of having 250 employees working in more than 20 states" and reasons that "[i]f their human resources process was so unsophisticated that it would hire employees in various states without regard to that state's labor law, then it is comprehensible that GHMC made mistakes affecting the existence of a

contract for arbitration with Gissell." *Id*.

Gissell's argument is unpersuasive.  First, whether GHMC investigated MCA §§ 39-2-901, et seq., which sections comprise Montana's Wrongful Discharge from Employment Act, is not related to whether there exists a valid arbitration provision or an agreement to arbitrate Gissell's claims against GHMC.  The Court is unable to discern a connection as Gissell suggests.

For these reasons, and for those reasons stated above respecting the Court's rejection of Gissell's arguments concerning RFAs 1-5, the Court will deny Gissell's motion to compel to the extent it relates to RFA 8.

## C.   RFA 14

Gissell propounded RFA 14 asking GHMC to admit that "Kelley Berkheiser, an employee of GHMC, as of June 20, 2012, had had no formal human resource training." *ECF 36 at 12-13*.

GHMC responded to RFA 14 with the same relevance objection stated above.  *Id. at 13*.

Gissell argues that the admission she seeks is relevant because,

"[o]bviously, if Ms. Berkheiser, who was in charge of all on-boarding of new employees and who reported directly to Mr. Wind, had no training in human resources, the chances that she might err, unintentionally even, is high." *Id*.

The Court rejects Gissell's argument. Whether there was a lack of human resources training at GHMC employee is not relevant to the narrow issue of whether there is a valid, applicable arbitration provision, nor is it likely to lead to the discovery of admissible evidence. For this reason, and for the same reasons previously stated concerning RFA 8, the Court will deny Gissell's motion to compel to the extent it relates to RFA 14.

## D. RFAs 28-40

Gissell propounded RFAs 28-40 asking GHMC to admit that: (1) "David Wind knew that GHMC was employing an immigrant who could not legally work in the United States during 2012[,]" (RFA 28); (2) "Marie Gannon and Amanda Granados knew that GHMC was employing an immigrant who could not legally work in the United States during 2012[,]" (RFA 29); (3) "David Wind knew that GHMC was

14

not paying that immigrant so as to hide her employment from the
relevant government agencies[,]" (RFA 30); (4) "Marie Gannon and
Amanda Granados knew that GHMC was not paying that immigrant so
as to hide her employment from the relevant government agencies[,]"
(RFA 31); (5) "in 2012 David Wind hired a young woman to work as an
executive assistant for Marc Schwaber[,]" (RFA 32); (6) "in 2012 shortly
after hiring her, David Wind started seeking bets from senior male
officers about how long it would [be] before Marc Schwaber sexually
harassed her[,]" (RFA 33); (7) "Marc Schwaber did sexually harass this
employee[,]" (RFA 34); (8) "in 2012 David Wind dispensed prescription
drugs to Marc Schwaber[,]" (RFA 35); (9) "in 2012 Marc Schwaber
dispensed prescription drugs to David Wind[,]" (RFA 36); (10) "in 2012
David Wind personally borrowed better than $3 million that he then
infused into GHMC[,]" (RFA 37); (11) "in 2012 David Wind
misrepresented the source of these funds to a [sic] potential warehouse
lenders[,]" (RFA 38); (12) "David Basaleli and Gerald Infantino and
Amanda Granados and Marie Gannon were all aware that Mr. Wind
was not being honest with a third party about the source of these

funds[,]" (RFA 39); and (13) "GHMC is aware that money was paid in 2012 to at least one third party to make at least one mortgage payment on behalf of at least one delinquent FHA borrower to cause their loan, originated by GHMC, to appear current or less delinquent[,]" (RFA 40). *ECF 36 at 13-15.*

For each RFA, GHMC responded as follows: "Objection; irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." *Id. at 15.*

Gissell first argues that each of these RFAs is related to her mistake affirmative defense, including "the circumstances surrounding the mistaken signature by Gissell, and to specific instances of conduct that are admissible on cross-examination of a witness under Federal Rule of Evidence 608." *Id.* She notes that "[a]ll of the conduct about which these Requests inquire reveal a deeply flawed human resources process and environment, indeed one that is in some instances simply corrupt. ... [E]vidence of the mistake-prone, slovenly human resources process is probative of the likelihood of there being no contract for arbitration." *Id. at 15-16.* Gissell also argues that "the human

resources sophistication of the party claiming there is an arbitration

contract arising out [of] its human resources process is relevant here."

*Id. at 16* (citing *Bixler v. Next Financial Group, Inc.*, 858 F.Supp.2d

1136 (D. Mont. 2012)).  She argues that she is entitled to attack the

credibility of GHMC witnesses who testify to prove there was an

arbitration contract by presenting "specific instances of conduct that

[is] probative of whether [they are] telling the truth."  *Id.*

For the same reasons articulated above with respect to other

requests for admission, the Court is unpersuaded.  Also, Gissell's

reliance on Rule 608 of the Federal Rules of Evidence is misplaced in

this instance.  Rule 608, Fed. R. Evid., provides:

> (a) Reputation or Opinion Evidence. A witness's credibility
> may be attacked or supported by testimony about the
> witness's reputation for having a character for truthfulness
> or untruthfulness, or by testimony in the form of an opinion
> about that character. But evidence of truthful character is
> admissible only after the witness's character for
> truthfulness has been attacked.
>
> (b) Specific Instances of Conduct. Except for a criminal
> conviction under Rule 609, extrinsic evidence is not
> admissible to prove specific instances of a witness's conduct
> in order to attack or support the witness's character for
> truthfulness. But the court may, on cross-examination, allow
> them to be inquired into if they are probative of the

17

character for truthfulness or untruthfulness of:

> (1) the witness; or

> (2) another witness whose character the witness
> being cross-examined has testified about.

By testifying on another matter, a witness does not waive
any privilege against self-incrimination for testimony that
relates only to the witness's character for truthfulness.

Although this rule permits the Court to allow, on cross-examination, inquiry into specific instances of a witness's conduct to attack the witness's character for truthfulness, the rule does not provide for inquiry into such instances during discovery. *Equal Employment Opportunity Commission v. First Wireless Group, Inc.*, 225 F.R.D. 404, 406 (E.D. N.Y. 2007) (noting that under Rule 608(b), admissibility of extrinsic evidence to impeach witness's credibility is not a standard governing discovery). Thus, at this juncture in the proceedings, Rule 608, Fed. R. Evid., does not provide Gissell an avenue to obtain the admissions she seeks.

As noted above, the specific instances of conduct by various individuals to whom Gissell refers in her RFAs appear unrelated, and therefore irrelevant, to whether there exists an agreement that

contains a valid arbitration provision and, in it, an agreement to arbitrate Gissell's employment disputes with GHMC. Rule 608, Fed. R. Evid., simply does not provide a basis for seeking, during the discovery process, admissions respecting specific instances of misconduct by the GHMC employees named, particularly when such instances are unrelated to the issue at hand. Thus, GHMC's objection is justified. For these reasons, the Court will deny Gissell's motion to compel to the extent it relates to RFAs 28-40.

### E.   <u>Allegedly Inadequate Verification by GHMC</u>

Gissell argues that GHMC Vice President David Basaleli's verification of GHMC's responses to her discovery requests is inadequate. *ECF 36 at 16-18*. The Court declines to address this argument because Gissell has not made the verification part of the record. Also, as GHMC notes, Rule 36 does not require verified responses, but only a response "signed by the party or its attorney." *Fed.R.Civ.P. 36(a)(3)*. Gissell's motion is denied to the extent it seeks an order striking Basaleli's declaration.

### F.      Motion for Sanctions and Attorney's Fees

Gissell seeks sanctions and attorney's fees.  *ECFs 35 and 36*.  As discussed above, however, her motion to compel was denied in its entirety.  GHMC also requests its fees and costs for being made to respond to Gissell's motion.  *ECF 38 at 15*.

Rule 37(a)(5)(B) provides that, when a motion to compel is denied,

> the court ... must, after giving an opportunity to be heard,
> require the movant ... to pay the party ... who opposed the
> motion its reasonable expenses incurred in opposing the
> motion, including attorney's fees.  But the court must not
> order this payment if the motion was substantially justified
> or other circumstances make an award of expenses unjust.

To afford Gissell an opportunity to be heard on the issue of whether she should be required to pay GHMC its reasonable expenses, including attorney's fees, incurred in opposing her motion to compel, the Court will afford Gissell time to file a response.

## IV.   Conclusion

Based on the foregoing, IT IS ORDERED that Gissell's motion (*ECF 35*) for an order: (1) compelling GHMC to answer her Requests for Admission ("RFA") numbered 1-5, 8, 14, and 28-40; (2) striking GHMC's verification of the responses; and (3) awarding sanctions and costs, is

DENIED.

IT IS FURTHER ORDERED that, on or before October 30, 2013, Gissell must file a response to GHMC's requests for fees and costs in responding to Gissell's motion.  Gissell must limit her discussion to the issues of whether her positions taken in her motion to compel were substantially justified or whether an award of fees and costs would be unjust.  Should the Court determine that an award of fees and costs is appropriate, it will direct the parties to file additional briefing respecting appropriate amounts.

DATED this 18th day of October, 2013.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge